Mr. Graham, we're happy to hear from you. Thank you, Your Honor. Good afternoon. May it please the Court. I'm Ed Graham from the District of South Carolina. We're here today about a Federal Tort Claims Act case involving a birth injury. Specifically, we allege obstetrical negligence in the vagal delivery where the top shoulder did not deliver spontaneously with normal maneuvers, and so the brachial plexus nerves in the neck were damaged, adversely affecting the muscle function of the arm and shoulder. Now, in this case, the court below granted a motion for summary judgment against us. We believe that he committed error in doing so, but of course, the standard here is de novo with the record interpreted, the facts interpreted, and like most favorable to us as the non-moving party. The central issue in this case is when did the cause of action accrue? It seems to me that that turns on two real issues. One is, under Fourth Circuit law, must there be a permanent injury under the facts of this case before there can be an accrual? Secondly, assuming that there is a requirement of permanency for there to be accrual, is permanency to be determined objectively by medical evidence or subjectively by the assumptions and beliefs and so forth of lay witnesses? Let me ask you this. Can't you argue that it's a question of the cause when the plaintiff knows the cause of the injury? And your experts said that you can't determine the cause of the injury here until you know that it's permanent. Precisely. Thank you, Judge Jones, for that insight. That is one of the reasons why it's so very important to determine permanency for purposes of accrual. In fact, it's the main purpose, as John points out. We've got controlling case law in this circuit. First of all, the cursed utter case indicates that the plaintiff does not know the cause of the injury when there is a mistaken diagnosis or an utter inability to provide a diagnosis about the medical cause of the injury, not the lay conclusion of the cause, but the medical cause of the injury. And that absence of a diagnosis presents the injured party from identifying the party responsible for the injury and causing the injury. So should we, based on the NOI requirement in South Carolina, a plaintiff can't file an action until you have an expert witness sign affidavit as to probable cause? Yes. So should it be, in this case, a two-year limitation is told until the probable cause diagnosis is made? I believe, Your Honor, that the accrual date or the tolling should be based on a variety of factors. First of all, the probable cause aspect, which requires permanency under the facts of this case. And it's somewhat hard for me to wrap my brain around the exact mechanism by which the South Carolina procedural law interacts with the substantive law of these issues in court. But I think they lead to the same result. And that is, without permanency, how on earth is the plaintiff to determine what the injury is and who caused it? The medical evidence goes unchallenged in this case about permanency. There is consistent testimony from the plaintiff's experts to the effect that, under the circumstances of this case, permanency could not have been determined until two years after the child was born. Under certain cases, there might be facts that would permit an earlier determination of permanency. But as pointed out by Dr. Resnick, who was chief of pediatric neurology at Miami Children's Hospital, under the facts of this case, there was no way to determine permanency until the level of improvement plateaued at age two. Interestingly enough, the court below found that the permanency could be determined subjectively by the father's testimony that he thought the improvement had plateaued at around 13 months of age. But the testimony affidavit of Dr. Resnick points out that it had not, in fact, plateaued at that date. That, in fact, the therapy notes confirm that there was continued improvement until the child was two years old. So the court below, in effect, elevated the mistaken belief of a lay witness on complex medical issues and did not take into account the unchallenged medical evidence, which is objective and described in scholarly, articulate terms about all the various factors that are considered in a situation like this to determine the date when permanency is determinable. So we believe under this case, Kerstetter is right on point when it talks about the utter inability to diagnose the medical cause until later. There was no ability to make that determination until two years after birth. And in making this argument, you rely on the experts, right? Absolutely. But we have the deposition testimony of both the mother and the father saying that there was, they knew that something was wrong, they knew there was an injury, and they knew that the doctor could cause the injury. Yes, ma'am. And then they went to seek medical advice. I mean, to seek legal advice on this very point. All of that were limitations. And yet they didn't file suit. Yes, ma'am. And you've raised several points there. They all go to the same point, that they were, they had sufficient information to put them on notice that they had a viable claim. I disagree. And they went to a lawyer. Respectfully, I disagree with that, Your Honor. They may have believed that they had a viable claim, but in fact they did not. So that they had to wait for a doctor to tell them that, before they had a viable claim. They had no idea what a viable claim was. They had no idea what a Fourth Circuit case law was. Why did they go to a lawyer, then? They went to a lawyer, undoubtedly, for legal advice. And I have no idea what that lawyer told them. It wasn't me. But I presume that if that lawyer was acting in accordance with what I believe to be standards of care, he would have told her, he would have told the parents, that it would be unethical to file a claim without a legitimate factual and legal basis of which neither existed until two years after the child was born. The mere fact that someone goes to see a lawyer hardly means that the person knows they have a viable lawsuit that could be executed. We have also their deposition testimony saying that they knew their child was injured and they knew that this doctor had caused it. Yes, ma'am. And so, if I may, one point I mentioned earlier is that the second part of the Kerstetter case has to do with, well, the second point of my position has to do with whether there must be objective evidence of permanency, whether subjective evidence of permanency controls, or whether the court should look at a combination of objective testimony and subjective testimony. The latter is the easiest to address because if the court is to look at subjective testimony, then they have to look at statements like, I saw this was an ugly delivery. I knew we had grounds for a lawsuit. I knew the doctor had caused this injury as soon as someone said that the baby was stuck in the pelvis. I knew that that meant the doctor was at fault. And I'm sure that this was going to be a permanent injury because it lasted more than 24 hours, like the older brother had a similar injury, but it resolved after 24 hours. So, we have here a layperson evaluating these issues without medical training, without medical knowledge, making factually incorrect assumptions, conclusions, opinions, and to the extent that those are mistaken, it's hard to see how they would have any significance under the Kerstetter case. Well, hey, Kerstetter, Judge Phillips, or us, said, you Kerstetter, you know Judge Phillips, so long as the plaintiff knows, quote, the critical fact of who has inflicted the injury, he can act to protect his rights by inquiring whether the injury was inflicted negligently. The objective evidence is clear and unchallenged that the issue of who caused the injury could not have been determined until age two. What you're saying is that there are two possible causes for this injury. One is the natural forces of birth. Secondly is the excessive manipulation by the obstetrician. And they could not know that until a period of two years had elapsed because, according to the expert testimony, if it's permanent, then it is likely, more than 50% true, that it was caused by the excessive manipulation by the obstetrician. And if it's not permanent, then it is likely that it was caused by the natural forces of birth. Eloquently stated, I agree 100%. And I would like to mention, we have the auto case cited in the brief where the court talks about the true nature, the patient must be aware of the true nature of these aspects, the injury and who caused the injury before accrual can occur. When I made the point about objective evidence should be controlled, subjective evidence should not even be considered relevant because it is so easily misunderstood, mistaken, etc. That's why we have Dahlberg to keep out unreliable expert testimony. We have the lay opinion rule to keep out all lay opinions unless they're obvious to a lay... That's why many states have adopted in South Carolina this provision that to file an Ed Mahal case, you have to have a review by a doctor who says, yes, there's probably a cause, there's negligence. Exactly. And that was... People jump to conclusions. Absolutely. And to require, to require that under the facts of this case, to require that suit be brought within two years would require the lawyer to do one of two things. Either act unethically under Rule 11 by filing suit without a proper basis or by watching the statute run. That's an absurd result. It's untenable policy for this court to establish. I see I'm out of time. Thank you. Thank you. I think you have some rebuttal. Good afternoon, Your Honor. May it please the Court. Dennis Fan on behalf of the United States. I want to address a few points that was in council raised up. First, I want to say that statute of limitations questions are supposed to be simple. They're not supposed to involve experts six years after the fact determining when or when the statute of limitations didn't run. These are supposed to be clear, simple rules that plaintiffs in every single case can follow. And Kubrick made that clear. He said that once you know if you're hurt and who hurt you, then you can start seeking advice. And that's when your statute of limitations period begins. The two issues I kind of want... Let me ask you. Let me give you a hypothetical. Suppose there's an operation and a minor operation, not considered likely to cause death. But it's a minor operation. The patient dies on the operating table. We don't know why, how. Is it your position that under African law that statute of limitations would run against the surgeons who were performing that death? I have two answers to that. One is this Court said and cursed that her only knowledge that the operation caused the injury and not the precise medical reason for the injury was enough. So to the extent that you had knowledge or that you should have known that the operation was what caused the injury, but you didn't know if it was because somebody clipped your heart valve or if it was... No, no, no. People die at natural causes. You were having some minor surgery and the person died. We don't know how. Absolutely. But it could have been something completely unrelated to the medical procedure. And I think the Supreme Court's decision in Kubrick takes care of that both in its language and on its facts. In its language it says all you need to know is the probable cause. You need to know that there's a probability that this is what that medical negligence could have... But in my hypothetical we don't know the probability. If you don't know anything at all, if you don't know that it could have... If the doctor... I mean, it's very difficult to know. No, no. I agree with you. You don't have to know the precise negligent act, but you don't know the cause of the death here. I mean, I think... You just died during an operation. I think even in that scenario... You would say that the statute runs from that date of death. Your Honor, it would very much depend on the surgery. If it was a risky surgery to begin with. If it was just you getting your wisdom teeth pulled out and then you end up with somebody dead on the back end. I think you have a probable... Let's change my hypothetical. You're at the dentist's office getting some teeth extracted. Then you die in the dentist's chair. Somebody died in the dentist's chair, not you. And so statute of limitations runs against that dentist's... Unfortunately, yes, Your Honor. From the date of death. From that date, it would run. Because at that point, you would have reasons to suspect that the dental operation caused your injury. Why would you have reason to suspect that? I mean, because a usual dental procedure doesn't result in death, despite how unpleasant it is. That's right, because it might result from natural causes. You had a heart attack. Not caused by the dental procedure, but just occurred. I want to turn to how similar this is to the vaccine Kubrick. In Kubrick, you had a plaintiff who was injured in their leg, but antibiotic applied to their leg. Six weeks later, they had a ringing sensation in their ear. In fact, in Kubrick, the government told the plaintiff that the ringing sensation was probably because he worked with heavy machinery. And that seems like a much more obvious explanation for why somebody has a ringing sensation in their ear. It's because, well, they work every day with heavy machinery. The fact that one single doctor said, well, you know, that might be caused by the antibiotic treatment that was applied to your leg. That was enough for the statute of limitations period to begin running. Now, this case, even the expert testimony, five or six years later, say that from the get-go, you would have known that you had a 5% or 20% chance that this would have been permanent. So you don't have to wait until that day comes. You don't need to wait until you know that your injury isn't going to go away, that your injury is going to become permanent, in order for you to bring suit. You can always bring suit that says, you know, right now I have a temporary injury. I don't know if later on that injury is going to become permanent, if you get hit by a postal train. But it's a cause. I mean, as I discussed with your colleague on the opposite side, you have to know the cause also. And causation is often a difficult question. And causation is often a difficult question that's litigated in court. But you have to have some knowledge. I mean, wouldn't you agree that the parents' opinions here were, based on the evidence presented in the district court, were completely naive, completely wrong? I wouldn't say that the parents' opinions were completely naive. I mean, the plaintiffs say, I was aware that the doctors were the responsible parties on the 4th of July, and that's at JA 681. The plaintiffs say that they knew something was wrong once they had finished delivering the child. And that's the mom at JA 687. It's not completely naive to realize that your child's arm isn't working. Well, but the mom said that she knew immediately when they said he's stuck in the pelvis area. And then she said in her deposition, it was the doctor. He was the one. In other words, when it was apparent that the child was stuck, the doctor was at fault. The experts say that's not correct. If it's a temporary injury, it's likely, uncontested testimony is, that it's a result of natural birth forces, not what the doctor manipulated. And sort of, maybe this is a little bit unclear from the discussion, but there's no evidence here that this was actually because of natural forces. The doctor testified in his deposition that he did manipulate the baby's head, or at least, I don't know what part of the baby exactly. But the mom said, you know, they pushed the dad aside. The doctor went in there and started, you know, presumably moving things around. So this isn't a case where, you know, baby pops out seamlessly. Maybe the right arm isn't completely working. And so you're not clear about why that happens. Their first child had had the same issue, and it had resolved itself within 24 hours, 48 hours, or something like that. Absolutely. And so here they had a fairly reasonable suspicion that after that amount of time, after a few months, a few months in therapy, a few months with an orthopedic surgeon having consultations, that they consulted a lawyer. Then they were told it would take about two years before we can say for sure. And even if it took two years to say for sure, your obligation is to follow the statute of limitations. I mean, the way you plead a complaint in that instance is pretty simple. You say, you know, I think I have a temporary injury. A temporary injury is still an injury, but two years with a nonfunctional arm is still pretty bad. You say that, you know, that might not go away. When you're a plaintiff and you get, as I was starting to say, if you get hit by a postal truck and you have a back injury, and you're only 20 years old, you think this thing's going to go away, it does go away, you don't have to wait until you're 50 until you need to have your disc replaced for your body to get worse in order to sue. That's not how it works. Once you know you've been injured and who caused that, those are the only requirements. But you don't know who caused that, do you, in this case? You know a probability that the doctor caused it? Because, I mean, I don't know at trial what the expert testimony would be, but the government didn't present any expert testimony here. It's all the plaintiffs, and it's all agreeable. I mean, they're all in agreement. And as Dr. Resnick said, whether an injury is temporary or permanent is of critical importance in terms of causation. And then he goes on to explain that temporary injury, temporary difficulty, may be caused, is likely to be caused by natural forces, while permanent is likely to be caused by excessive manipulation. And you can't determine that. In his opinion, he may be wrong, but that's the only record we have. You have to wait two years. And even their experts, even Dr. Plisko says, from the get-go, there's a 5% to 20% chance that any of these sort of injuries are going to be permanent. So from the start, you know there's a chance. And this is exactly the sort of issue that Kubrick dealt with, which is you don't know the cause. You don't know if it's from heavy machinery and working with that day to day. You don't know if it's from antibiotic treatment. Those are issues that you sort out in litigation, not prior to litigation. You don't get to wait years and years and years to figure out what the cause is, because by that time, people's memories have changed, documents get lost. I mean, the point is that once you know enough information that you can hurt and that you should know who's... Well, it is a little different, though, than the... It is complex, and it's a serious question, I agree. But it's not like a car accident. You run down in the street. You know who's driving the car. And in a situation where the cause, whether it's the doctor or natural forces, it seems somewhat different. Your Honor, again, I would say that's no different, because those are issues that you can litigate. And issues of causation in tort law and with tort claims are issues that are litigated every single day. People bring experts to decide whether something was caused by negligence or whether it wasn't caused by negligence. There's no requirement under Rule 11 or any other rule that you know for certain what the cause is. All you need to say is, upon good faith and belief, we think that this is... It could be a temporary injury, but it could be a permanent one if the doctors, in fact, caused this through medical negligence and created a permanent injury. Some states have stricter laws, but under the Federal Courts Claim Act, it's when the plaintiff becomes aware or should have become aware through the exercise of due diligence, both of the existence of the injury and of its cause. Is that correct? So Kubrick says, the clock starts, and this is page 122 of Kubrick, once a plaintiff is in possession of the critical facts that he has been hurt and who has inflicted the injury. And so in this case, we know that the doctor was involved. You know who you're going to sue. We know he inflicted the injury. You know who you're going to sue. And that's the point of Kubrick, is once you have those critical facts, then you can start to engage in your get medical advice, get legal advice, figure out how you can best bring your claim, figure out whether to bring a claim at all. And in this case, we know that they started to get legal advice. And that's pretty key here because the entire point of when a statute of limitations approves is so that you can start. And here, there's over six months in which they were getting legal advice. We know that from the fall of 2010, roughly, until April 2011, which is when they first sent their document request to the orthopedic's office. Throughout that entire period, they had been getting legal advice. Now, I mean, I don't think... It's an expense to the system if people file too soon, also. I mean, protection limitations, we all know as lawyers, are important and have good motivation. But, you know, we don't want people filing when they don't have the facts, either. It's not like, in this case, they filed, you know, two years and one day after they had the facts, right? They filed three years. Or rather, they filed a notice of intent to file suit three years after the fact in South Carolina court. So, I mean, I know there's some suggestion of tolling. I'm not sure that necessarily applies here because they have waited for a very long time. In fact, that was three and a half years, roughly, until they filed an administrative claim under the FTCA. So, what you're really talking about is a situation where, even assuming they know about this two years and one day, at that point, they really should have. Their lawyer should have filed suit in order to make sure that they were as close to getting within the statute of limitations as possible. And if that had been the case, where somebody filed two years and one day, that would be a much different sort of dispute, where we could dispute about when exactly knowledge came. Was it birth? Was it shortly after birth? And that would be a much cleaner dispute. Well, the mother, as I understand, said she knew immediately when the child came out. She said because there was this problem, she knew right away. I do want to walk you through a little bit of the contemporaneous medical documentation because they do say that. And I agree that a reasonable interpretation is to take them on their face, but even the day after they got x-rays by the obstetrician, and they got x-rays on the baby's arm, the day after that, that's day two, they get referrals over to PT. They get referrals to the orthopedic doctor's office. Three days after is when they actually go see the orthopedic doctors. Maybe four days after is when they actually go see the orthopedic doctor's office. And he lists on his form that the date of injury was birth. And so we might have some dispute, again, at the margins of, did they know that the baby was injured right when the baby came out? Did they need an x-ray to tell them that? But this is a fairly narrow margin of what we're disputing in that sense. And the only other point I wanted to raise is under South Carolina law, this is only a notice of intent to file a suit. So even assuming we think that they filed within two years of the notice under South Carolina law, they hadn't actually filed a civil action that would fall within the Westfall Act's savings clause. And so in that sense, to the extent that the court needs to decide the issue and decides it differently than what we've raised in the briefs, which is that we think that even under an extremely generous reading of the record, the injury didn't accrue or the cause of action didn't accrue until April 2011 and accrued, let's say, in July 2011. Even under those facts, you wouldn't satisfy the requirements of South Carolina law because you wouldn't have filed an actual civil action, which is what South Carolina law requires. If there are no further questions. I just have one question about Kerstetter, which is one of our cases in which a colleague has relied extensively. And it sort of has two parts. It has where the limitations have run and where the limitations have been told. You've probably read it a hundred times. And the court holds that limitations have run. And it sounds like you're dealing with our case. You may be referring to the blameless ignorance portion of Kerstetter. Again, I think that's a little bit confusing. I think that's still about when the limitations period begins and when the cause of action accrues. And that's the question of not exactly whether it's told or accurately told. No, no, no, no. It's not about tolling, to be sure. But we're here talking about whether limitations have passed. And I thought that one of the arguments was that things hadn't accrued until our experts told us that this was, in fact, an injury. Right, and I think that is one of the arguments. I mean, I want to point out this is a limited exception. And once you've found that, the other rules wouldn't get you there. Then you can rely on sort of a limited exception for where there is blameless ignorance. But Kerstetter referred to Otto. And Otto is a case where there's already a preexisting injury. So there's a preexisting thyroid condition. And there the doctors are trying to treat that preexisting injury. So it's not clear if the negative consequences are because of the preexisting injury that was already there or because of the doctor's treatment or if the doctor's treatment didn't fully resolve things. But this is a very different case. It's not like somebody said before birth, well, your baby's not going to have a functioning arm. And the doctor pulls the child out. And lo and behold, the child doesn't have a functioning arm. This is a quite different case than that. There's no suggestion here. This does not follow from what you said. This is a new paragraph, new topic. There's no suggestion here that anyone but the doctor could have caused this injury. And there never has been a suggestion. There's no suggestion. And the doctor here didn't make the absolute assurance, as they did in Otto, and that Kerstetter was referring to, that this child would get better. In fact, if you look on page, I forget the page number,  where they say most of these resolve within one year, the doctor says sometimes shoulder dystocia results in death. I mean, this isn't a case where the doctor says your child certainly will get better. The doctor says there might be pretty serious consequences to this. So at that point, if parents are on notice that this is a pretty serious condition, it can result in very serious consequences. At that point, that's when your statute of limitations begins. If the panel does not have any further questions, this Court should affirm the order of the district court. Thank you. May it please the Court. Judge Moss, following up on your last inquiry, I'd like to point out that part of Kerstetter indicates that when a physician assures a patient that the ill effects of a medical procedure will be temporary, the patient does not know that he suffered an injury until he learns that his harm will, in fact, not go away. But the doctor here didn't assure them that it was temporary. That's interesting, but that's not our facts, right? Well, I respectfully disagree. Okay, where is that? On JA pages 707 through 708, Dr. Ogunleye, who I will refer to Dr. O from now on if I may, Dr. O indicated initially he had stated that he believes 90% of all brachial plexus birth injuries are temporary. But he goes on to say that although he doesn't remember his precise words with this patient, that it is his custom and practice and routine to tell patients that usually you've got a big baby, there's a difficult delivery, and that 90% of these are temporary. I'm sorry, where are you talking to me from? Page what? My note says page 707 to 708. Okay. And he indicates that 90% resolve within a year spontaneously. That's not a direct quote, but a close substance. So I believe that the Kerstetter case on that point does, in fact, relate to these facts. Third, I'd like to point out that Kerstetter in two places and Otto in one place support my proposition that an objective view of permanency is required. Kerstetter on the permanency issue talks about a mistaken diagnosis or an utter inability to form a diagnosis of the medical cause. Diagnosis, medical cause. That doesn't necessarily mean permanency. You can have an injury for which you can recover damages that can be remedied by a further operation or by some sort of therapy. Yes, Your Honor, but permanency in this case can't be determined for two years. You don't need to have permanency is what I'm saying. You can still file a cause of action even if the injury is not permanent. Not ethically, I would respectfully submit. You might not get any big money, but any injury is subject to court claim. Only if you can prove that who did it and that it was done negligently. We can't address any of those issues under the facts of this case until two years have passed. Further, the Kerstetter case talks about a physician assurance and the patient does not know he suffered an injury that will in fact not go away, will in fact suggest something other than the patient's subjective view that it's permanent before the doctors say it's permanent. Third, the Otto case talks about what matters is whether the patient is aware of the true nature. True nature implies medical knowledge, not mistakenly assumptions or conclusions. Another point, if I may. The parents here thought they had knowledge because they had a control group of one, their older son. They had a test group of one, their younger son. They thought they had reliable knowledge, which is just absurd. It's like a football situation where a player gets a sting or injury to his arm when his head is moved to the side, just like in a vaginal birth. Some of those might be out for the rest of the game. Some might be out for a couple of games. But if a layperson thinks this player's out for longer than that player, that means this player has a permanent injury. I mean, it just proves the unreliability of lay testimony, lay conclusions, which are so often mistaken. So we would ask under the dates of this case, we file timely if the accrual date is two years after the birth. Thank you. We will ask our clerk to adjourn court and then we'll move down to briefing. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Diana Gribbon Motz, Henry F. Floyd, James P. Jones